## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 06 2015, 8:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Victoria Christ
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathan A. Slabach, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff,* | August 6, 2015 <br><br> Court of Appeals Cause No. 20A03-1408-PC-292 <br><br> Appeal from the Elkhart Superior Court <br> The Honorable George W. Biddlecome, Judge <br> Cause No. 20D03-1210-PC-90 |

**Robb, Judge.**

## Case Summary and Issues

[1] Nathan Slabach appeals the post-conviction court's denial of his petition for post-conviction relief, raising two issues for review: (1) whether Slabach

received ineffective assistance of counsel, and (2) whether Slabach's guilty plea was knowing, intelligent, and voluntary. Concluding the post-conviction court did not err by denying Slabach's petition, we affirm.

# Facts and Procedural History

In the fall of 2008, Phillip Miller hired Slabach to repair the garage at a vacant house that Miller owned in Elkhart, Indiana. Slabach, in turn, hired Joseph Buelna to help him with the work. Unbeknownst to Miller, Slabach and Buelna used Miller's vacant house to manufacture and smoke methamphetamine.

On October 13, 2008, law enforcement officers investigated a possible methamphetamine lab at the house owned by Miller. Officers approached the house and detected a chemical odor which they associated with the manufacture of methamphetamine. Two officers climbed a ladder propped against the house which led to the second floor, where they discovered Buelna inside along with an assortment of materials used to manufacture methamphetamine. Slabach arrived at the house soon after, accompanied by Kammi Pantoja. Slabach, Pantoja, and Buelna were all arrested. An active methamphetamine lab was found in Pantoja's vehicle, along with syringes, iodine, digital scales, and fuel additive. A search of the house revealed several items associated with the manufacture of methamphetamine: eight spent reaction vessels; pseudoephedrine tablets; hydrochloric acid generators; lithium batteries; cold packs; coffee filters; and three active reaction vessels. Two of the reaction vessels tested positive for ephedrine or pseudoephedrine. The third

reaction vessel tested positive for liquid methamphetamine, which weighed approximately thirteen grams.

[4] Slabach was charged with aiding in dealing in methamphetamine over three grams, a Class A felony, and burglary, a Class C felony. On September 10, 2009, Slabach pled guilty to both counts. In exchange for his plea, his sentence was capped at thirty years, and criminal charges against Slabach in a separate cause were dismissed. Slabach was sentenced to thirty years imprisonment.

[5] Buelna was charged with Class A felony manufacturing methamphetamine and convicted of that offense in August 2012. Slabach testified at Buelna's trial. Slabach testified that prior to the officers' arrival at the house, he removed approximately six grams of methamphetamine from three reaction vessels and left. He claimed he smoked some of that methamphetamine and threw the rest away before he was arrested.

[6] On October 1, 2012, Slabach filed a petition for post-conviction relief. An evidentiary hearing was held on that petition on March 5, 2014. At the hearing, Slabach presented testimony from Hailey Newton and Sara Wildeman, two Indiana State Police lab analysts, and Fay Schwartz, Slabach's trial counsel.

[7] Schwartz testified about a handwritten note she wrote referencing a conversation with a deputy prosecutor about the case. The note indicated that the State's expert witness would testify that the conversion rate from raw materials to methamphetamine was between 40-75%. A computation at the bottom of the note said "19.3 x .40 = 7.72." Exhibit 5. However, Newton and

Wildeman clarified that the conversion rate applies to the amount of pseudoephedrine, which is a key ingredient for methamphetamine. Newton testified that the pseudoephedrine tablets recovered contained 2.16 grams of pseudoephedrine. Utilizing the conversation rate of 40-75%, the 2.16 grams of pseudoephedrine would not produce an amount of methamphetamine equal to or greater than three grams. Slabach testified that he pled guilty to the Class A felony because he believed that the evidence, as presented to him by Schwartz, showed that he was guilty of the crime as charged.

[8] On July 29, 2014, the post-conviction court denied Slabach's petition for relief. This appeal followed. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[9] A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. *Id.* at 746.

## II.   Ineffective Assistance of Counsel

First, Slabach argues that his trial counsel was ineffective.  The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance.  *Id.* at 687.  When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. *Id.* at 689.  A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

When a defendant contests his guilty plea based on claims of ineffective assistance of counsel, we apply the same two-part test from *Strickland* discussed above.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  The first part, regarding counsel's performance, is largely the same.  *Id.*  The prejudice requirement, however, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, . . . the defendant must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

[12] The two prongs of the *Strickland* test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. 466 U.S. at 697. For instance, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient. *Id.*

[13] Slabach contends that his counsel performed deficiently by incorrectly informing him that the State would be able to prove that he manufactured methamphetamine in an amount greater than three grams. Specifically, Slabach claims that his counsel's incorrect advice was the result of inadequate investigation and improper arithmetic. The State argues that Slabach overlooks the significance of the liquid methamphetamine, which was sufficient to prove Slabach was guilty of the Class A felony at the time of his guilty plea.

[14] Both before and for several years after Slabach's guilty plea in 2009, it was established that the weight of an unfinished methamphetamine product could be used to prove guilt of manufacturing methamphetamine under Indiana Code section 35-48-4-1.1. *See, e.g., Hundley v. State*, 951 N.E.2d 575, 581-84 (Ind. Ct. App. 2011), *trans. denied*; *Caron v. State*, 824 N.E.2d 745, 754 n.7 (Ind. Ct. App. 2005), *trans. denied*; *Traylor v. State*, 817 N.E.2d 611, 619-20 (Ind. Ct. App. 2004), *trans. denied*. It was not until more recently, in *Buelna v. State*, that our

Supreme Court overruled those decisions and held that only the finished methamphetamine product—or evidence as to the amount of finished product that an intermediate mixture would have yielded—may be used to support a weight enhancement for manufacturing methamphetamine. 20 N.E.3d 137, 149 (Ind. 2014). However, for the purposes of this case, it is the pre-*Buelna* decisions that are controlling, because a finding of ineffective assistance of counsel "requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not anticipating or initiating changes in the law." *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008), *trans. denied*.

[15] At bottom, Slabach's argument is that he was improvidently advised to plead guilty when the State could not have proven he was guilty of manufacturing methamphetamine as a Class A felony. Slabach is incorrect. The intermediate mixture of liquid methamphetamine found by police weighed thirteen grams. At the time Slabach pled guilty, that evidence was sufficient to prove he manufactured methamphetamine in an amount greater than three grams. Therefore, Slabach's claim—that he was improperly advised to plead guilty to an offense that the State could not prove—is erroneous. Slabach cannot demonstrate that he was prejudiced by his counsel's advice, and thus his claim of ineffective assistance fails.

## III. Validity of Slabach's Plea

[16] Second, Slabach claims that he did not enter into his guilty plea intelligently and voluntarily. A guilty plea is valid "only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citation and quotation marks omitted). We look at all evidence before the post-conviction court that supports its determination that a guilty plea was voluntary, knowing, and intelligent. *Moffitt v. State*, 817 N.E.2d 239, 248-49 (Ind. Ct. App. 2004), *trans. denied*.

[17] Slabach's claim of an invalid plea rests on the same faulty premise as his ineffective assistance claim—namely, he wrongly believes that the State could not have proved he was guilty of manufacturing methamphetamine as a Class A felony. We therefore conclude that the voluntariness of his plea could not have been negated by a mistaken belief concerning the State's ability to prove he was guilty of manufacturing methamphetamine as a Class A felony.[1]

# Conclusion

[18] Concluding the trial court did not err by denying Slabach's petition for post-conviction relief, we affirm.

---

[1] The State argues that Slabach does not present a valid challenge to the validity of his plea, but that "Slabach's claim fails even on its own on [sic] terms." Brief of Appellee at 19. We agree that Slabach's claim fails regardless, and thus a more in depth discussion of his claim's viability is unnecessary.

Affirmed.

May, J., and Mathias, J., concur.